[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 27, 2005
THOMAS K. KAHN
CLERK

No. 04-15233
Non-Argument Calendar

_____

D. C. Docket No. 03-01754-CV-RWS-1

PAUL HOLMES,

Plaintiff-Appellee,

versus

BOB CROSBY,
GARFIELD HAMMONDS, JR.,
EUGENE P. WALKER,
BETTY ANN COOK,
WALTER S. RAY,
BOBBY WHITWORTH,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 27, 2005)**

Before TJOFLAT, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

The defendants in this civil rights action, members of the Georgia Board of Pardons and Paroles and an individual parole officer (collectively the "Board"), appeal the district court's denial of their motion for summary judgment.

## I. FACTS

On December 10, 1996, Plaintiff Paul Holmes was released on parole after serving his sentence in Georgia for armed robbery and aggravated assault. In response to his request for relocation, he was permitted to serve his probation in Florida. Upon his release from prison, he was issued a parole certificate, which contained the conditions of his parole and a directive on how to contact the Georgia Interstate Compact Unit if he lost contact with his assigned parole officer.

In 1999, Florida authorities informed the Board of several parole violations which Holmes allegedly committed. At a probable cause hearing, Holmes pleaded guilty to a single charge of violating his parole.[1] Several months later, Georgia authorities inquired into the status of pending criminal charges against Holmes, and were informed that the charges were *nolle prossequi*. Georgia sent another letter to Florida requesting that Florida continue its parole supervision of Holmes. Florida did not respond expeditiously to this request, and subsequently released

---

[1]Holmes admitted to refusing to undergo urine testing in violation of his parole. The remaining charges were found to lack probable cause.

Holmes from his parole.

The Florida authorities eventually informed the Board that it had closed interest in Holmes's case and further indicated that the case could not be re-opened without more information on Holmes's location. When the Board received this information, a member of the Georgia Interstate Compact Service contacted the Miami Dade County Metro Police and attempted to locate Holmes at his last known address, which was his sister's residence. A man living at Holmes's sister's residence indicated that Holmes no longer lived there. The following day, the Board issued an arrest warrant and Order of Temporary Revocation of Parole for Holmes based upon the Georgia Interstate Compact Service's research and belief that Holmes had absconded from parole supervision.

Holmes was arrested on Georgia's parole warrant on December 28, 2000 and subsequently returned to Georgia. Holmes was denied a preliminary hearing because of his "parole absconder" status. A final parole revocation hearing was not held until March 21, 2001. At the hearing, Holmes testified that he had written to the Board for instructions after being told that he was no longer on parole in Florida, but received no answer, and was never told that his parole supervision had been transferred to Georgia. The Chief Parole Officer in Georgia, Bob Crosby, testified that nothing had gone wrong in Holmes's case, and that Florida had closed

3

interest in the case because authorities could not locate Holmes. Based on the testimony provided at the hearing, the Board revoked Holmes's parole.

Holmes applied for a writ of habeas corpus. The state court reversed the findings the Board made at the initial hearing and ordered the Board to provide Holmes with another final parole revocation hearing. At the second hearing on October 3, 2001, Holmes contended that although he knew he was supposed to report, he did not know to whom. The hearing officer agreed that "there seem[ed] to be a serious breach in communication between Florida and Georgia in reference to [Holmes]." Thus, the Board reparoled Holmes.[2]

On June 23, 2003, Holmes filed a 42 U.S.C. § 1983 action against Bob Crosby and the following members of the Board: (1) Garfield Hammonds, Jr.; (2) Eugene Walker; (3) Betty Ann Cook; (4) Bobby Whitworth; and (5) Walter S. Ray all in their individual capacities. Holmes asserted claims for false imprisonment and violation of his due process rights. He requested both monetary and declaratory relief.[3]

The Board moved for summary judgment, arguing that there was no

---

[2] Holmes had been incarcerated on the parole violation for eleven months.

[3] Specifically, he requested monetary relief in the amount of $100,000 jointly and severally against each of the defendants for compensatory damages and $20,000 against each of the defendants for punitive damages. The only declaratory relief he requested was a statement indicating that the defendants had violated his constitutional right to due process.

4

constitutional right to parole and that Crosby and the Board members were entitled to qualified immunity. The district court denied the Board's motion for summary judgment.[4] The Board now appeals.

## II. DISCUSSION

### A. Standard of Review

We review a district court's denial of summary judgment *de novo*, viewing the evidence in the light most favorable to the party opposing the motion. *Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co.*, 111 F.3d 852, 858 (11th Cir. 1997).

### B. Absolute Quasi-Judicial Immunity

To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed. 2d 40 (1988).

On appeal, the Board members contend that they are not only entitled to qualified immunity, but that they are also entitled to absolute quasi-judicial

---

[4]The district court denied summary judgment to the Board members in their individual capacities but granted summary judgment to the Board members in their officials capacities. A review of Holmes's complaint, however, indicates that he did not sue the Board members in their official capacities. Thus, we decline to address this issue.

5

immunity.[5] We repeatedly have held that individual members of the Parole Board are entitled to absolute quasi-judicial immunity from a suit for damages. *Fuller v. Georgia State Bd. of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988); *see also Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 641 n.2 (11th Cir. 1990); *Sultenfuss v. Snow*, 894 F.2d 1277, 1278-79 (11th Cir. 1990), *vacated and affirmed on other grounds after rehearing en banc*, 35 F.3d 1494 (11th Cir. 1994). Thus, we hold that the district court erred in permitting the claims for monetary damages to proceed against the individual Board members.

We have not yet determined, however, whether a parole officer is also entitled to quasi-judicial immunity. We held in *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir. 1984) that probation officers receive immunity in preparing presentence investigation reports. Additionally, we held in *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999), that witnesses in criminal trials and grand jury proceedings are afforded absolute immunity even if their testimony is false. We also stated that "the Supreme Court has interpreted § 1983 to give absolute immunity to functions intimately associated with the judicial process." *Id.* (internal quotations omitted).[6] Although a parole hearing is not a criminal hearing or grand

---

[5]The Board asserted this defense in its "Mandatory Disclosures" below, and therefore this issue was properly raised before the district court.

[6]We also note that in *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985), the Supreme Court observed that several federal appellate courts have held

jury proceeding, we read the Supreme Court's and our previous cases to imply that parole officers enjoy immunity for testimony given during parole revocation hearings when they act within the scope of their duties. Thus, because Crosby was acting within the scope of his duties when he testified, we conclude that the district court erred in permitting the claims for monetary damages to proceed against Crosby.[7]

## III. CONCLUSION

Accordingly, we REVERSE the denial of summary judgment and REMAND for the district court to dismiss the monetary claims against the Board members and Crosby on the basis of absolute quasi-judicial immunity. Furthermore, once the monetary damages are dismissed, the only remaining claim is for declaratory relief. As there is no declaratory relief available, summary judgment should be granted on this claim.

---

that state parole officials have absolute immunity.

[7]Because we hold that Crosby and the Board members are entitled to absolute quasi-judicial immunity, their alternative qualified immunity defense is moot.

7